# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

WILLIAM SCHULTEN, JR.,            :

                      Plaintiff,

      -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

                  Defendant.       :

Case No. 3:11-cv-357

District Judge Walter Herbert Rice
Magistrate Judge Michael R. Merz

# REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986).

1

Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. § 404.1520. First, if the claimant is currently engaged in substantial

gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1. If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. § 404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed an application for SSD on January 8, 2003, alleging disability since December 1, 2002. (Tr. 127). The Commissioner denied Plaintiff's application initially and on reconsideration. (Tr. 102, 108). Administrative Law Judge Daniel Shell held a hearing, (Tr. 439-66), and subsequently determined that Plaintiff is not disabled. (Tr. 328-46). The Appeals Council granted Plaintiff's request for review and remanded the matter for further proceedings. (Tr. 352-54). In doing so, the Appeals Council noted that during this period of time, specifically on October 5, 2005, Plaintiff had filed a subsequent application for SSD and that on remand this new application should be associated with the January 2003 application. *Id.*

On remand, Judge Shell held a hearing, (Tr. 467-90), and again determined that Plaintiff is not disabled. (Tr. 36-61). The Appeals Council denied Plaintiff's request for review, (Tr. 6-

9), and Judge Shell's decision became the Commissioner's final decision. See *Kyle v. Commissioner of Social Security,* 609 F.3d 847, 854 (6th Cir. 2010). Plaintiff filed an action in this Court pursuant to 42 U.S.C. § 406(g) seeking judicial review of the Commissioner's decision. *Schulten v. Commissioner of Social Security,* No. 3:08-cv-0003, filed Jan. 9, 2008 (Doc. 2) (*"Schulten I"*). On February 3, 2009, Magistrate Judge Sharon Ovington issued a Report and Recommendations in which she determined the Commissioner had erred at steps two and four of the sequential evaluation process and recommending that the matter be remanded for further administrative proceedings. *Id.* at Doc. 14. District Judge Walter Rice adopted that Recommendation on March 30, 2009, and the Clerk entered judgment accordingly. *Id.* at Docs. 17, 18.

On remand, Administrative Law Judge James Knapp held a hearing. (Tr. 1196-1231), and on December 8, 2009, he issued a decision in which he determined that Plaintiff is not disabled. (Tr. 504-36). In doing so, Judge Knapp noted that Plaintiff had filed an additional application for SSD on November 21, 2007, and Judge Knapp combined that application with the applications before him which necessitated his issuing two decisions which are substantively the same. *Id.* In addition, Plaintiff had filed an application for SSD on April 5, 2008, and again on July 10, 2008, which Judge Knapp addressed in his December 2009 decision. *Id.* The Appeals Council denied Plaintiff's request for review, (Tr. 491-93), and Judge Knapp's decision became the Commissioner's final decision. *Kyle, supra.*

In determining that Plaintiff is not disabled, Judge Knapp found that Plaintiff has severe coronary artery disease, moderate exogenous obesity, depressive disorder NOS, and anxiety disorder NOS, but that he does not have an impairment or combination of impairments that meets or equals the Listings. (Tr. 508, ¶ 3; Tr. 512, ¶ 4). Judge Knapp also found that Plaintiff

has the residual functional capacity to perform a limited range of medium work. (Tr. 514, ¶ 5). Judge Knapp then used sections 203.15 and 203.07 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, and concluded that there is a significant number of jobs in the economy that Plaintiff is capable of performing. (Tr. 517, ¶ 10). Judge Knapp concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 518).

In March 2002 Plaintiff was hospitalized after he had a myocardial infarction. (Tr. 228-43). At that time, Plaintiff underwent the insertion of a stent in his circumflex artery. *Id.* A July 2002 echocardiogram revealed moderate left ventricular hypertrophy with a left ventricular ejection fraction of 40-45% and a December 2002 exercise stress test revealed an ejection fraction of 72% and a moderate fix perfusion defect inferior and infero-septally. (Tr. 248; 244).

Subsequent to his myocardial infarction and insertion of a stent, cardiologists Drs. Sinnathamby and Kahn monitored Plaintiff's cardiac status. See, *e.g.,* Tr. 317. In October, 2003, Dr. Sinnathamby reported that Plaintiff complained of a significant amount of fatigue and shortness of breath and Dr. Sinnathamby recommended that if Plaintiff's test results were normal, he should start an exercise program to lose some weight. *Id.*

Examining physician Dr. Danopulos reported on June 13, 2003, that Plaintiff weighed two hundred forty-six pounds, was seventy-one inches tall, his blood pressure was 165/98, his lungs were clear, his heart tones were normal, and his upper and lower extremities had full ranges of motion. (Tr. 277-87). Dr. Danopulos also reported that Plaintiff had a normal gait, his spine was painless to pressure, his paravertebral muscles were soft and painless to palpation and pressure, his spinal ranges of motion were normal, he was able to squat and arise from a squat, and that there was no evidence of nerve root compression or peripheral neuropathy. *Id.* Dr.

Danopulos noted that Plaintiff's neurological examination was normal and that his knee x-rays revealed mild degenerative joint disease. *Id.* Dr. Danopulos also noted that Plaintiff's complaints of right knee pain could not be documented, his chest pain was not typical for angina pectoris, his complaints of effort-related shortness of breath were rather subjective, his blood pressure was poorly controlled, and that he suffered from exogenous obesity. *Id.* Dr. Danopulos opined that the objective findings were right knee early arthritis, history of previous heart attack without current angina pectoris, subjective complaints of effort-related shortness of breath, poorly controlled hypertension, and exogenous obesity, and that his ability to do any work-related activities is mainly affected from his uncontrolled hypertension which suggests a non-stressful job in order to prevent any further elevation of his blood pressure. *Id.*

Plaintiff underwent an adenosine cardiolite test in October 2003 which was negative for ischemia, revealed a small area of perfusion defect of moderate size during exercise but which partially improved during rest which most likely represented a small myocardial infarction, and an ejection fraction of more than 70%. (Tr. 316).

Examining psychologist Dr. Boerger noted on March 24, 2003, that Plaintiff reported that he had suffered a heart attack a year ago and he had no other major health problems, that he had arthritis in his knees and shoulders, and that he had high blood pressure. (Tr. 250-54). Dr. Boerger also noted that Plaintiff reported further that he had a nervous breakdown in 1971, following which he was hospitalized for a couple of months, and that he had no other psychiatric treatment history. *Id.* Dr. Boerger reported that Plaintiff graduated from high school, attended college for two and one-half years, was currently employed at Arby's Roast Beef and worked four to five hours a day, he had normal speech, his affect was appropriate, and that he was alert and oriented. *Id.* Dr. Boerger also reported that Plaintiff's diagnoses were depressive disorder

NOS and anxiety disorder NOS and he assigned Plaintiff a GAF of 62. *Id.* Dr. Boerger opined that Plaintiff's abilities to relate to others and to withstand the stress and pressures associated with day-to-day work activity were mildly to moderately impaired, and that his abilities to understand and follow instructions and to maintain attention to perform simple repetitive tasks were mildly impaired. *Id.*

On November 12, 2003, a cardiac catheterization was negative for stenosis and revealed elevated left ventricular end diastolic pressure and a left ventricular ejection fraction of 55%. (Tr. 298).

The record contains treating physician Dr. Klamar's office notes dated February, 2004, through July 15, 2009. (Tr. 317-27; 377-93; 426-30; 662-65; 996-1023; 1164-67). Those notes reveal that Dr. Kalmar treated Plaintiff for various medical conditions and related complaints including fatigue, knee pain, feeling depressed and stressed, carpal tunnel syndrome, hypertension, coronary artery disease, and dyslipidemia. *Id.* On March 29, 2004, Dr. Klamar reported that Plaintiff experienced fatigue with exertion and repetitive exercise, that he was able to lift/carry up to ten pounds occasionally and up to five pounds frequently, sit for four hours in an eight-hour workday and for four hours without interruption, and sit for five hours in an eight-hour workday and for eight hours without interruption. (Tr. 305-09). Dr. Klamar also reported that Plaintiff was capable of performing sedentary work on a sustained basis but was not capable of performing either light or medium work on a sustained basis. *Id.* On January 8, 2006, Dr. Klamar reported that Plaintiff suffered a heart attack in March, 2002, since then he had very poor exercise tolerance with excessive fatigue, he had developed depression, and that he was disabled due to fatigue and poor exercise tolerance. *Id.*

In December, 2006, Plaintiff attempted a stress test which had to be terminated due to Plaintiff's extreme fatigue and which revealed a significantly impaired exercise capacity. (Tr. 434). A January 10, 2007, EKG revealed mild left ventricular hypertrophy, evidence of left ventricular diastolic dysfunction, mild mitral and pulmonic regurgitation, and no significant pericardial effusion. (Tr. 432).

Dr. Boerger examined Plaintiff again on March 13, 2006, and noted that Plaintiff reported he had a heart attack in 2002, was obese, had high blood pressure, high cholesterol, carpal tunnel syndrome in both wrists, vision problems in his left eye, some hearing problems, had surgery to have some cysts removed, had a stent installed for his heart, had a nervous breakdown in 1971, and was hospitalized for several months, had a relapse in 1972, and was hospitalized again at which time he had shock treatments, and that he had not had any psychiatric treatment since then. (Tr. 401—06). Dr. Boerger also noted that Plaintiff reported he graduated from high school and attended two years of college, was currently working part-time ten to twenty hours a week at Arby's Roast Beef, and that he got short of breath and had chest pain at work. *Id.* Dr. Boerger reported that Plaintiff was very verbal and would at times go into considerable detail to describe events and situations, his affect was appropriate, he was alert and oriented, and he appeared to be aware of his health and emotional problems. *Id.* Dr. Boerger identified Plaintiff's diagnoses as depressive disorder NOS and anxiety disorder NOS and he assigned him a GAF of 56. *Id.* Dr. Boerger opined that Plaintiff's abilities to relate to others and to withstand the stress and pressure associated with day-to-day work activity were moderately impaired, his ability to understand and follow instructions was mildly impaired, and his ability to maintain attention to perform simple repetitive tasks was mildly to moderately impaired. *Id.*

Cardiologist Dr. Khan reported on December 26, 2006, that Plaintiff complained of shortness of breath and fatigue. (Tr. 433). Dr. Kahn also reported that Plaintiff's stress test was negative for ischemia, his ejection fraction was normal, there was evidence of an old inferior wall scar, and that he had markedly compromised exercise capacity. *Id.* Dr. Kahn opined that Plaintiff's symptoms were partly from deconditioning and possibly from obstructive sleep apnea. *Id.*

On May 29, 2007, Dr. Klamar reported that Plaintiff had dyspnea with exertion, poor exercise tolerance, depression, and anxiety, and that his condition was poor but stable. (Tr. 649-51). Dr. Klamar also reported that Plaintiff was able to stand/walk for four hours in an eight-hour day, his ability to sit was not affected by his impairments, he was able to lift/carry up to five pounds frequently and ten pounds occasionally, was markedly limited in his ability to push/pull, and that he was moderately limited in his ability to bend and reach. *Id.*

Plaintiff underwent a sleep study on January 4, 2008, which revealed moderate sleep apnea. (Tr. 968).

On June 26, 2008, Dr. Boerger examined Plaintiff again and he reported that Plaintiff graduated from high school, attended college for two years, last worked in May 2006 at Arby's Roast Beef and quit that job because his wife got a job working in the evening and he didn't want her out by herself, his speech and thought processes were appropriate, relevant and coherent, and that his affect was appropriate. (Tr. 970-75). Dr. Boerger also reported that Plaintiff was alert and oriented, displayed symptoms of anxiety and depression, and that his diagnoses were generalized anxiety disorder and depressive disorder NOS and he assigned him a GAF of 52. Dr. Boerger opined that Plaintiff's abilities to relate to others, understand and follow instructions, and withstand the stress and pressures associated with day-to-day work activity

were moderately impaired, and his ability to maintain attention to perform simple repetitive tasks was mildly impaired. *Id.*

An August 25, 2008, cardiac stress test revealed that Plaintiff had an impaired exercise capacity with an inability to achieve the target heart rate, no evidence of ischemia, and a normal ejection fraction of 76%. (Tr. 676).

Dr. Klamar reported on July 15, 2009, that Plaintiff was able to lift/carry twenty pounds occasionally and five pounds frequently, stand/walk for one hour in an eight-hour day and for less than one hour without interruption, his ability to sit was not affected by his impairment, and that he was not able to perform medium, light, or sedentary work. (Tr. 644-48). Dr. Klamar attributed Plaintiff's restrictions to his cardiac impairment, poor tolerance for heat and humidity, limited exercise tolerance, and his depressive symptoms. *Id.*

Plaintiff received mental health treatment at Shelby County Counseling during the period April 11, 2008, through May 13, 2009. (Tr. 601-29). When Plaintiff was first evaluated in April, 2008, by a therapist, it was noted that Plaintiff was seeking treatment due to feeling depressed and angry, his diagnosis was depressive disorder, recurrent and moderate, and he was assigned a GAF of 60. *Id.* Plaintiff was evaluated by psychiatrist Dr. Woodrow on May 5, 2008, who identified his diagnoses as major depression, recurrent and severe without psychotic features and mood disorder due to medication side effects, and obstructive sleep apnea. *Id.* Dr. Woodrow assigned Plaintiff a GAF of 45 and noted that Plaintiff had limited coping skills, average attention/concentration, was depressed, anxious, and irritable, and that his affect was full. *Id.*

On November 7, 2008, Dr. Woodard reported that she first saw Plaintiff on April 30, 2008, he was overweight, had normal conversation and speech, was depressed and anxious, his

memory was impaired, his insight and judgment were good, and that his diagnosis was major depressive disorder, recurrent and severe without psychotic symptoms. (Tr. 1055-57). Dr. Woodrow also reported that Plaintiff's abilities to remember, understand, and follow directions, to maintain attention, and to sustain concentration were normal. *Id.*

Dr. Woodard reported on July 1, 2009, that Plaintiff's diagnosis was major depression, recurrent and severe, that he was not able to perform several work-related mental activities, he was easily angered, very tense, and hypervigilant, and that he had to rest frequently. (Tr. 631-43). Dr. Woodard also reported that Plaintiff had moderate restrictions of activities of daily living, marked difficulties in maintaining social functioning, and moderate deficiencies of concentration, persistence, or pace. *Id.* Dr. Woodard noted that Plaintiff had good to fair to poor abilities to make occupational adjustments, good abilities to make performance adjustments, and good to fair, to poor abilities to make personal-social adjustments. *Id.*

Dr. Klamar reported on July 15, 2009, that Plaintiff was able to lift/carry twenty pounds occasionally and five pounds frequently and stand/walk for one hour in an eight-hour work day and for less than one hour without interruption, and that his ability to sit was not affected by his impairments. (Tr. 644-48). Dr. Klamar also reported that Plaintiff should never balance, his ability to push/pull was affected, he had several environmental restrictions, and that he was not able to perform sedentary, light, or medium work. *Id.* Dr. Klamar attributed Plaintiff's limitations to his cardiac impairment, limited exercise tolerance, and medication side effects. *Id.*

The medical advisor (MA) testified at the hearing that since 2002, Plaintiff has not satisfied the Listings, he had an "excellent" cardiac ejection fraction and no evidence of ischemia after his initial heart attack, and that he would be capable of performing medium work. (Tr. 1218-26). The MA also testified that Plaintiff was deconditioned, should be restricted to

frequently, rather than constantly, stooping and bending, and that he was not doubting Plaintiff's credibility as to his complaints of fatigue. *Id.*

In his Statement of Errors, Plaintiff alleges that the Commissioner erred by failing to appropriately consider his fatigue, obesity, and depression and their impact on his ability to perform work, by rejecting treating physician Dr. Klamar's and treating psychiatrist Dr. Woodard's opinions, and by finding that he is not credible. (Doc. 6).[1]

Plaintiff argues first that the Commissioner erred by failing to properly consider his alleged fatigue, obesity, and depression and their effects on his ability to perform work.

Contrary to Plaintiff's argument, Judge Knapp considered Plaintiff's allegations of disabling fatigue. However, after considering Plaintiff's subjective complaints in accordance with the Regulations, Judge Knapp determined that the medical evidence does not support Plaintiff's allegations. (Tr. 508-11).

In many disability cases, the cause of the disability is not necessarily the underlying condition itself, but rather the symptoms associated with the condition. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 247, (6th Cir. 2007). Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used in evaluating complaints of disabling pain. *Rogers, supra* (citations omitted). First, the ALJ will ask whether there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. *Id.* (citation omitted). Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities, *Id.*

---

[1] S. D. Ohio Civ. R. 5.1(a) provides that all pleadings, motions, briefs, and other papers filed with the Court shall be double spaced except for quoted material. This Court's review of Plaintiff's Statement of Errors, as well as his Reply Memorandum, (Doc. 10), indicates that those pleadings do not meet the double-spaced requirement of the local rule. The Court reminds counsel of the Rule's provision.

The record shows that while Plaintiff had a myocardial infarction and a stent insertion in 2002, his subsequent objective medical tests revealed, at worst, mild findings. In addition, Plaintiff's cardiologist Dr. Khan, as well as the MA, opined that Plaintiff's fatigue and reduced capacity for exercise were due to his deconditioning and not his cardiac status. Further, examining physician Dr. Danopulos essentially reported that Plaintiff had a normal physical examination. Although Plaintiff alleges that his ability to work only part-time at Arby's supports his allegation of disabling fatigue, the objective medical evidence does not support his allegation. Indeed, as Judge Knapp noted, (Tr. 516), there is no medical evidence in the record that after Plaintiff's March, 2002, cardiac event that any of his treating physicians limited him to part-time work. In fact, as noted above, Plaintiff's cardiologist, Dr. Sinnathamby, encouraged him to get into an exercise program.

Plaintiff argues next that the Commissioner erred by failing to properly consider his obesity.

Social Security Ruling (S.S.R.) 02-1p recognizes that obesity may affect body systems including the musculoskeletal, respiratory, and cardiovascular body systems. S.S.R 02-1p, 2000 WL 628049 (Sept. 9, 2002). The Ruling provides that obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing. *Id.* at *5.

As noted above, Judge Knapp determined that Plaintiff has severe moderate exogenous obesity. However, Judge Knapp also determined, and the record establishes, that none of Plaintiff's objective test results support a finding that Plaintiff's alleged cardiac impairment is of disabling severity. Moreover, there is no medical evidence that supports Plaintiff's position that his obesity has aggravated or increased the severity of his alleged cardiac impairment.

Plaintiff next argues that the Commissioner erred by failing to consider the effect his depression has on his ability to perform work.

Again, contrary to Plaintiff's arguments, Judge Knapp thoroughly considered Plaintiff's alleged mental impairment and, although he determined it is a severe impairment, he concluded that it was not disabling. (Tr. 509-14). Because Judge Knapp had an adequate basis for reaching that conclusion, *see, infra,* Plaintiff's argument is not well taken.

Under these facts, the Commissioner did not err by failing to consider the effects of Plaintiff's fatigue, obesity, and mental impairment on his ability to perform substantial gainful activity.

In support of his second Error, Plaintiff argues that the Commissioner failed to give the proper evidentiary weight to treating physician Dr. Klamar's and treating psychiatrist Dr. Woodrow's opinions.

"In assessing the medical evidence supporting a claim for disability benefits, the ALJ must adhere to certain standards." *Blakley v. Commissioner of Social Security,* 581 F.3d 399, 406 (6th Cir. 2009). "One such standard, known as the treating physician rule, requires the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians because

> these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone of from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Id.*, *quoting*, *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544, (6th Cir. 2004), *quoting,* 20 C.F.R. § 404.1527(d)(2).

"The ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley,* 581 F.3d at 406, *quoting, Wilson,* 378 F.3d at 544. "On the other hand, a Social Security Ruling[2] explains that '[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record.'" *Blakley, supra, quoting,* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996). "If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley,*582 F.3d at 406, *citing, Wilson,* 378 F.3d at 544, *citing* 20 C.F.R. § 404.1527(d)(2).

"Closely associated with the treating physician rule, the regulations require the ALJ to 'always give good reasons in [the] notice of determination or decision for the weight' given to the claimant's treating source's opinion." *Blakley,* 581 F.3d at 406, *citing,* 20 C.F.R. §404.1527(d)(2). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'"

---

[2] Although Social Security Rulings do not have the same force and effect as statutes or regulations, "[t]hey are binding on all components of the Social Security Administration" and "represent precedent, final opinions and orders and statements of policy" upon which the agency relies in adjudicating cases. 20 C.F.R. § 402.35(b).

*Blakley,* 581 F.3d at 406-07,*citing,* Soc.Sec.Rule 96-2p, 1996 WL 374188 at *5.   "The *Wilson* Court explained the two-fold purpose behind the procedural requirement:

> The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied.  *Snell v. Apfel,* 177 F.3d 128, 134 (2nd Cir. 1999).  The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.

*Blakley,* 581 F.3d at 407, *citing, Wilson,* 378 F.3d at 544.   "Because the reason-giving requirement exists to ensure that each denied claimant received fair process, the Sixth Circuit has held that an ALJ's 'failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight' given '*denotes a lack of substantial evidence,* even where the conclusion of the ALJ may be justified based upon the record.'" *Blakley, supra, quoting, Rogers v. Commissioner of Social Security.,* 486 F.3d 234, 253 (6th Cir. 2007)(emphasis in original).

Judge Knapp determined that Dr. Klamar's opinion was not entitled to controlling or even deferential weight primarily because it was internally inconsistent and was not supported by his objective findings or the objective test results.  (Tr. 515). Judge Knapp also noted that Dr. Klamar is not a cardiologist and that no cardiologist corroborated his opinion. *Id.* The Court cannot say that the Commissioner erred in his evaluation and weighing of Dr. Klamar's opinion.

First, Dr. Klamar did not support his opinions that Plaintiff is disabled with any objective findings.  Rather, he simply attributed Plaintiff's limitations to his cardiac impairment, exercise intolerance, or side effects of medication.  Next, a review of Dr. Klamar's treatment notes reveals that they contain few, if any, objective medical findings.  Furthermore, many of Dr.

Klamar's notes are essentially recitations of Plaintiff's subjective complaints and his opinions about Plaintiff's residual functional capacity appears to be based on Plaintiff's self-reports as to his abilities. See, *e.g.,* Tr. 320. In addition, Dr. Klamar's opinion that Plaintiff is disabled is not supported by the objective tests which generally revealed, at worst, mild findings, or by the findings of Plaintiff's treating cardiologists. Finally, Dr. Klamar's opinion is inconsistent with examining physician Dr. Danopulos' findings and opinion, the MA's opinion, and the opinions of the reviewing physicians. See Tr. 256-60; 395-401; 1025-31; 1079-85.

In considering Dr. Woodard's opinion and declining to accord it controlling or great weight, Judge Knapp determined that it was not supported by Plaintiff's treatment history and inconsistent with other evidence. (Tr. 516). As with Judge's Knapp's evaluation and weighing of Dr. Klamar's opinion, the Court cannot say that the Commissioner erred.

Although Dr. Woodard essentially opined that Plaintiff has moderate to marked limitations in his ability to function, that opinion is not supported by Plaintiff's treatment notes from Dr. Woodard or from his therapist. For example, when Plaintiff was first evaluated by his mental health therapist, the therapist noted that Plaintiff was cooperative and had a full affect and normal thought processes. See Tr. 619-30. Dr. Woodard's clinical notes indicate that while she noted that Plaintiff was depressed and anxious, she documented few other objective clinical findings and her notes are essentially reflective of Plaintiff's subjective complaints. Further, over time, Dr. Woodard noted that Plaintiff's therapy notes indicated that Plaintiff was improving. See, *e.g.,* Tr. 607; 613. In addition, Dr. Woodard noted that Plaintiff was noncompliant with his prescribed medication. See, *e.g.,* Tr. 607; 611.

Dr. Woodard's opinion is inconsistent with the other evidence of record. Specifically, in contrast to Dr. Woodard's opinion, examining psychologist Dr. Boerger concluded on three

occasions that in spite of his depression and anxiety, Plaintiff was, at worst, moderately impaired. Dr. Woodard's opinion is also inconsistent with the reviewing psychologists' opinions. See Tr. 408-25; 1063-75; 987-93.

Under these facts, the Commissioner did not err by failing to give controlling or even great weight to Drs. Klamar's and Woodard's opinions.

Plaintiff argues in support of his third Error that the Commissioner erred by failing to find him entirely credible.

It is, of course, for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 247 (6th Cir. 2007)(citations omitted). An administrative law judge's are entitled to considerable deference and should not be lightly discarded. *See, Villarreal v. Secretary of Health and Human Services,* 818 F.2d 461 (6th Cir. 1987); *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230 (6th Cir. 1993). Determination of credibility related to subjective complaints rests with the ALJ and the ALJ's opportunity to observe the demeanor of the claimant is invaluable and should not be discarded lightly. *Gaffney v. Bowen,* 825 F.2d 98 (6th Cir. 1987).

However, the ALJ is not free to make credibility determinations based solely upon an "intangible or intuitive notion about an individual's credibility." *Rogers, supra* (citation omitted). Rather, such determination must find support in the record. *Id.* Whenever a claimant's complaints regarding symptoms or their intensity and persistence are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints "based on a consideration of the entire case record." *Id.* The entire case record includes any medical signs and lab findings, the claimant's own

complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record. *Id.* Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant while inconsistency, although not necessarily defeating, should have the opposite effect. *Id.*

In *Felisky v. Bowen,* 35 F.3d 1027, 1039-40 (6th Cir. 1994), the Court set out seven (7) factors which the ALJ is to consider when evaluating a claimant's subjective complaints. The Court derived those factors from 20 C.F.R. §404.1529(c)(3). *Id.* However, while the *Felisky* Court applied each of the factors in the case before it, *Felisky* does not require that the ALJ engage in such an extensive analysis in every decision. *Bowman v. Chater,* No. 96-3990, 1997 WL764419 at *4 (6th Cir. Nov. 26, 1997). It does require that in addition to objective medical evidence the ALJ consider non-medical factors. *Id.*

SSR 96-7p provides that the Commissioner may not disregard a claimant's subjective statements concerning his ability to work "solely because they are not substantiated by objective medical evidence". *See, Saddler v. Commissioner of Social Security,* No. 98-5440, 1999 WL 137621 at *2 (6th Cir. Mar. 4, 1999)[173 F.3d 429 table], *citing,* SSR 96-7p. SSR 96-7p directs the Commissioner to provide "specific reasons" for making a credibility determination. *See, Spicer v. Apfel,* No. 00-5687, 2001 WL 845496 at *1 (6th Cir. July 16, 2001).

Contrary to Plaintiff's argument, Judge Knapp did not entirely reject Plaintiff's allegations and subjective complaints. Rather, he determined that the evidence did not support Plaintiff's allegations that he is totally disabled. (Tr. 516). Additionally, Judge Knapp properly identified and applied the applicable *Felisky* factors. See Tr. 508-09.

In rejecting Plaintiff's allegations of total disability, Judge Knapp noted that in addition to the medical evidence not supporting Plaintiff's complaints, other factors did not support his allegations. For example, Judge Knapp noted that Plaintiff opted on his own to return to only part-time work after his March 2002 heart attack and that no medical care provider recommended that he work only part-time. (Tr. 516). Judge Knapp noted further that Plaintiff's medical care providers recommended that he become more active and engage in an exercise program and that his physicians attributed his fatigue to his de-conditioning and not to his alleged heart impairment. *Id.* In addition, Judge Knapp noted that Plaintiff had worked part-time until early 2006, at which time he quit his job so that he could help his wife with her night-time commercial cleaning business, that he engaged in normal daily activities when he wanted to engage in them, his medical conditions were stable, and that he had stopped getting his nitroglycerin prescription filled. (Tr. 516-17).

Under these circumstances, this Court cannot say that the Commissioner erred in his evaluation of Plaintiff's credibility or by finding that he was not entirely credible.

The Court's duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

June 5, 2012                                    **s/ Michael R. Merz**
                                        United States Magistrate Judge


## NOTICE  REGARDING  OBJECTIONS

     Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations.  Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).